### SHIPMAN v STATE

Ohio Appeals, 6th Dist, Lucas Co
No 2494. Decided March 2, 1931

..C. J. McLaughlin, Toledo, for Shipman.
Carl J. Christensen, Toledo, for State.

### THE FACTS ARE STATED IN THE OPINION.

WILLIAMS, J.

William E. Shipman, plaintiff in error here, was indicted for the crime of sodomy under §13043 GC. Upon trial he was convicted and sentenced to the Ohio Penitentiary for a minimum term of five years.

The complaining witness and five other small boys testified to acts of sodomy committed by the defendant at about the same time, and two other small boys testified to attempts on the part of the defendant to handle their persons in an immoral manner. The testimony of these witnesses, except that of the prosecuting witness, was admitted under the rule laid down in **Barnett v State, 104 Oh St, 298.**

The evidence as to the guilt of the accused is overwhelming. There is evidence tending to show that when he was brought into the police station, the written statements of the prosecuting witness and one of the other boys (Exhibits Nos. 4 and 5) were read to the defendant and he was asked if they were true; he put his hand to his head and staggered all over the place as if he were going to fall, and perspiration fell from his head and Captain of Detectives McCloskey said "You had better catch him or he is going to land on his head" and Officer Earl McBride caught him and put him in a chair and the accused kept saying "Water, water" and McBride brought him a drink. Later the written statements of two other boys (Exhibits Nos. 1 and 2) were read to the defendant, and he denied the charge, but there is testimony to the effect that perspiration fell off of his face and he would not look up.

The court permitted the written statements of those four boys to be read to the jury, over the objection and exception of counsel for the defendant. A serious question is presented, in view of the rule laid down by the Supreme Court in **Neighbors v State, 121 Oh St, 525.** It is true that in the instant case there was evidence tending to show incriminating conduct on the part of the defendant, to which we called attention above. There is no good reason why such incriminating conduct, induced by and immediately following the reading of a statement, may not be shown in evidence, upon the same principle as incriminating language. Actions often speak more loudly than words. Without knowing the contents of the statements inducing the incriminating conduct, the jury could not fully understand the meaning of the actions of the accused.

The instant case differs, however, from the Neighbours case, in that each one of the four boys who made the statements testified under oath as witnesses for the State, and related everything which appears in the written statements, so that when they were read to the jury there was merely a repetition of what had been testified to in person by the witnesses making the written statements.

If we are to assume, for the purpose of discussion, that the action of the court in permitting the statements to be read was erroneous, we are nevertheless presented with the further question whther the alleged error was prejudicial to the accused. While the doctrine of harmless error has always existed, the General Assembly has attempted to galvanize it into life and give it meaning by the recent enactment of §13449-5, GC, wherein it is provided that no judgment of conviction shall be reversed "for the admission or rejection of any evidence offered for or against the accused,

unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby." If the judge had repeated the testimony of these witnesses to the jury upon a request for further instructions relating to matters of fact, or had the prosecuting attorney, in his argument to the jury, repeated the testimony of these witnesses, ground would not have been afforded for the predication of error.

In the state of the record in the present case, with its overwhelming and convincing proof of guilt, the doctrine of harmless error may well be applied to the reading of the statements in question. We think the doctrine is well stated in the text found in 2 R. C. L., 247, §205, which we quote:

"The erroneous admission of evidence has, under the circumstances of the case, frequently been held harmless error and therefore not ground for reversal. This rule has frequently been applied in civil cases. It is obvious that in the stress of a trial the trial judge must pass upon questions relating to the admission of evidence without time for reflection or study, and if a case were to be reversed for every technical error in rulings on evidence, but few judgments would be affirmed. To remove such a condition of affairs, the harmless error doctrine is invoked in almost every case in which an appellate court is asked to review a ruling on the admission of evidence, and in perhaps a majority of cases it operates as a shield for the trial judge. The broadness of the statement of the harmless error doctrine, however, necessarily leaves room for dispute about the prejudicial effect of a certain species of evidence, and no hard and fast rule can be laid down as to what errors in admitting evidence can be deemed harmless. Every case must, to a great extent, rest on its own bottom. While perhaps the courts are more likely to hesitate in applying the harmless error doctrine against one accused of crime, still, even in criminal cases, when it can be clearly seen that the accused was not prejudiced by the erroneous admission of the evidence objected to, a reversal will be refused."

While there is some question whether the admission of the statements was error, in view of the action of the accused when they were read to him, still if their admission was error, the error was harmless.

After the jurors had retired, they were called into the court room by the trial judge, who instructed them regarding their being taken out for supper by the bailiff.

After such instructions were given, the foreman of the jury rose and said the jurors desired further instructions on the question of reasonable doubt. The court thereupon read §13442-3 GC to the jury, and then made the following statement:

"There have been thousands of definitions of reasonable doubt given by thousands of judges over the United States, but the definition of reasonable doubt that I have just given you has been adopted by the legislature of Ohio from the definition of reasonable doubt first promulgated by Chief Justice Shaw of the State of Massachusetts, in the case of The Commonwealth of Massachusetts against Webster. You will remember that that case was tried about 1850. Webster, the defendant, had been a professor in Harvard University, and borrowed some money from Dr. Parker (Parkman), and it seems that he went to Dr. Parker's (Parkman's) house to collect the money and they had a quarrel, and Parker (Parkman) was killed. Professor Webster was indicted, tried, and convicted and hanged. You may now put on your coats and hats and go to supper in charge of the Bailiff."

This statement of the court was excepted to by counsel. We are of the opinion that it would have been better not to have made this statement to the jury, but do not find that the making of it constituted prejudicial error in the instant case.

We find no error apparent on the face of the record prejudicial to the plaintiff in error, and the judgment will therefore be affirmed.

LLOYD and RICHARDS, JJ, concur.